[Civ. No. 29440.   Second Dist., Div. Three.   Mar. 31, 1967.]

COUNTY OF LOS ANGELES, Plaintiff and Appellant, v. GENERAL TELEPHONE COMPANY OF CALIFOR-NIA, Defendant and Respondent.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Assistant County Counsel, for Plaintiff and Appellant.

O'Melveny & Myers, Sidney H. Wall and Richard C. Warmer for Defendant and Respondent.

SHINN, J.*—The action is by the County of Los Angeles to collect rental from General Telephone Company of California for the use of county bridges for its transmission cables. The court denied the motion of the county for judgment on the pleadings and granted a similar motion of the defendant. The county appeals.

The company maintains and operates a telephone system in Los Angeles County and elsewhere in California under a legislative franchise found in section 7901 of the Public Utilities Code which reads as follows: "Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this State, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters."

The original legislation on the subject was a statute of 1850 (Stats. 1850, p. 369, amended, Stats. 1857, p. 171) relating to telegraph companies which read: "§ 150. Such association is authorized to construct lines of telegraph along and upon any of the public roads and highways, or across any of the waters within the limits of this State, by the erection of the necessary fixtures, including posts, piers, or abutments, for sustaining the cords or wires of such lines: *Provided,* the same shall not be so constructed as to incommode the public use of said roads and highways, or injuriously interrupt the navigation of said waters; nor shall this Chapter be so construed as to authorize the construction of any bridge across any of the waters of this State."

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

The statute, as amended in a minor particular, was codified in 1872 as section 536 of the Civil Code. In 1905 (Stats. 1905, p. 492) the franchise was extended to telephone companies and in 1951 section 536 became section 7901 of the Public Utilities Code.

In 1941 the county adopted an ordinance under which anyone desiring to lay a pipeline (includes conduit, cable or wire) upon a bridge must first obtain a permit from an authorized county officer and pay yearly in advance certain specified charges. Prior to 1952 the company obtained permits and paid the charges. Since that time it has obtained permits but has paid none of the rental charges. The present action is for the recovery of accumulated charges since 1952 for the use, at various times, of seven county bridges upon which the company's pipe lines have been laid and maintained. The demand is for $19,217.69.

The sole question in the case is whether the right to use roads and highways granted by the franchise includes the right to use bridges.

The same question was presented to the superior court in 1952 in the case of the county against Pacific Telephone and Telegraph Company. The county was endeavoring to collect rent for the use of a county bridge to carry the cables and wires of the company. Judgment was rendered in favor of the company and the county did not appeal. The well-reasoned opinion of the trial judge, the Honorable Clarence M. Hanson, has been furnished by appellant and appears in the appendix to its brief. The court reached the following conclusions: ''It [company] cannot be compelled to pay for erecting or maintaining new lines along or upon a bridge in the highway if such a bridge may properly be classed as a part of the highway'' and, also, ''The true rule as we see it, and it appears to be well established, is that public bridges, including the approaches thereto, are a part of the highway which passes thereover except where the language of some particular statute is such as to show plainly that the term 'highway' is not intended to include bridges.'' The reasoning of the opinion was that an intention to exclude bridges could not be found in the wording of the franchise.

In our judgment these conclusions are unassailable. That a bridge which supports a section of the highway is a part of

the highway is a physical fact apparent to any observer. The county does not contend otherwise.

What the county does contend is that the grant of a right to use highways excludes those sections supported by bridges unless they are specifically included in the language of the grant. Reason and authority are to the contrary.

Great diligence and skill have been devoted by the attorneys in research and presentation of their contentions. Including an appendix of 113 pages, there are 228 pages of appellant's briefs; respondent's brief is limited to a modest 44 pages. We doubt that any case which would shed even faint light upon the merits of the case of the county has been overlooked. An examination of the authorities relied upon by the county reveals that each case which considered whether the word highways was intended to include highway bridges has applied the rule that the word should be given the meaning which would best accomplish the purpose to be served by the grant of a franchise or a legislative act conferring some right or power or imposing some duty with respect to highways.

In order to determine whether the franchise granted to telegraph companies, later extended to telephone companies, was for complete rather than restricted use of roads and highways the courts must look for guidance to the conditions under which the franchise was granted and to the public interest intended to be served thereby. In answering the question we receive no help from the reasoning of other courts in solving problems of interpretation that bear no resemblance to a construction of the California franchise.

Basic facts of California history will show compelling reasons for granting telegraph and telephone companies a franchise to use roads and highways for their systems and no reason whatever for attributing to the Legislature an intent to deny them the right to effective use of those portions of highways that extended over bridges. The facts are of common knowledge; we merely call attention to them. With respect to the means of communication with the remainder of the country and within its own confines the State suffered great disadvantage. Communication by mail was by sailing vessels around the Horn; within the State it was by stage and river boats. Telegraph services were available to meet immediate needs and to prepare the State for nationwide communication that was to come. As an inducement to the companies the State offered the use of roads and highways, without which

there would probably have been no company able or willing to enter the State. The franchise cost the State nothing. The rewards were great.

The eminent historian Eldredge wrote: "In 1853 a telegraph line was built from San Francisco to the entrance to the Golden Gate, and this was the first telegraph in California. Its principal, if not its only use, was to announce the approach of steamers, and it replaced the semaphore which had been previously depended upon to signal their arrival to the station on Telegraph hill from which the news was announced to the city by means already explained. [In theatres, engine companies, and in the streets.] In 1852 work was begun on a telegraph line to connect San Francisco and San Jose, Stockton, Sacramento, and Marysville, and it was completed in 1853. Another line later connected San Francisco with Nevada City by way of Auburn and Placerville. This line was extended as far north as Yreka in 1858. In 1859 a line was built to Los Angeles, by which it was expected that the news brought by the stages would be forwarded considerably earlier than otherwise to the San Francisco papers; but the line from Placerville was extended to Carson City at about the same time, where much later news was received by the pony express, so the Los Angeles line was not as valuable as had been expected. In 1861 the first line across the continent was completed and thenceforth California had direct communication with the east.* When the war began in 1861 the stage line by the southern route was discontinued, and a more direct line by way of Salt Lake was opened. Over this the letter mails and such express matter as could pay the high rates charged, were carried until the completion of the first transcontinental railroad in May, 1869." (Zoeth Skinner Eldredge, ed. History of California—The Rise And Progress Of An American State [New York: Century History Co., 1915], vol. 4, pp. 9, 10.)

There are sound reasons for believing that the Legislature understood and intended that the right to use roads and highways included the right to use bridges. The county has suggested no reason for excluding their use. The very purpose of the grant for the use of State easements was to spare the companies the expense of acquiring easements over privately owned lands; to cause them wasteful expense would have been

---

*"The first dispatch over this line when completed announced the death of Colonel E. D. Baker at Ball's Bluff."

contrary to the State's purpose to encourage their entrance into the State and the expectation of the companies.[1] Use of the bridges by the companies would shield them from needless expense and would cost the public nothing. Whatever lessens the cost of rendering service by public utilities operates in favor of the consuming public. A hundred years of operation of the system over highway bridges has demonstrated the wisdom of the Legislature of 1850. It compares favorably with the efforts of the county to exact rental for the use of its bridges.

Elaboration upon our conclusions would serve no useful purpose. The plain facts of the case render the position of the county untenable. The bridges which are in use by the company are integral parts of the system of roads and highways. Since the franchise does not exclude the use of highway bridges the only reasonable interpretation is that it was the intention of the Legislature in granting the franchise, and of the companies, as well, in the fulfillment of their contract obligations, that the use of the highway bridges was included in the grant.

The judgment is affirmed.

Ford, P. J., and Moss, J., concurred.

A petition for a rehearing was denied April 13, 1967, and appellant's petition for a hearing by the Supreme Court was denied May 24, 1967.

---

[1] "From Sacramento and Stockton numerous lines of stages ran to the smaller towns further in the interior, and even to many of the more remote mining camps, for a large part of the distance over fairly well made roads, on which the larger streams as well as many of the smaller ones had been spanned by substantial bridges." (Eldredge, *op. cit.*, vol. 4, pp. 5, 6.)